J-S39031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KELLI D. MICHAEL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RYAN A. MICHAEL | : | |
| | : | |
| Appellant | : | No. 646 WDA 2024 |

Appeal from the Order Dated May 2, 2024
In the Court of Common Pleas of Clarion County Civil Division at No(s):
961 CD 2022

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: January 16, 2025**

Appellant Ryan A. Michael (Father) appeals from the order granting the petition filed by Appellee Kelli D. Michael (Mother) seeking relocation and modification of a child custody order relating to the parties' six-year-old twin sons, E.R.M. and S.K.M. (collectively, the Children).  On appeal, Father argues that the trial court abused its discretion when it applied the sixteen custody factors and the ten relocation factors.  We affirm.

By way of background, the Children were born in March 2018, at which time both parties lived in Venango County.  At all times relevant to this appeal, Mother was employed as a registered nurse at Butler Memorial Hospital in Butler County, and Father was employed as a corrections officer at State Correctional Institution (SCI)-Forest, which is located in Forest County.  In 2020, the family moved to Clarion County.

The parties separated in the spring of 2022, at which time Mother remained in the marital home with the Children, and Father moved to an apartment four miles away. *See* N.T. Hr'g, 2/13/24, at 46, 51, 160. On October 20, 2022, Mother initiated the underlying custody action, along with a divorce complaint. Following a custody conciliation conference, on December 9, 2022, the trial court issued an agreed-upon order awarding the parties shared physical custody of the Children on a 2-2-3 weekly basis ("existing custody order").[1]

The trial court summarized the procedural history as follows:

> On July 26, 2023, Mother filed a petition for relocation. . . . Mother desires to relocate to Oil City, Venango County [to the residence of her fiancé, Michael Beichner]. On August 24, 2023, Father filed a counter-affidavit regarding relocation, in which he objected to the relocation and requested a hearing. On the same date, Father also filed a petition for special relief, alleging Mother's fiancé, [Mr.] Beichner, was a danger to the Children and requesting an order prohibiting contact between Mr. Beichner and the Children. On October 9, 2023, a hearing was held on Father's petition for special relief. Following the hearing, this court denied the request for no contact or supervised visits with Mother's fiancé but limited the amount of time that Mother could rely upon her fiancé as a caretaker for the Children without notifying Father. The court also conducted a prehearing conference with both parties on October 9, 2023 regarding Mother's proposed relocation.

Trial Ct. Op., 5/1/24, at 1-2 (unpaginated) (formatting altered).

---

[1] This arrangement involves a two-week, repeating schedule wherein the Children spend two days with one parent, the next two days with the other parent, then three days with the first parent. The schedule switches the following week and repeats thereafter. *See* Trial Ct. Custody Consent Order, 12/12/22.

On November 3, 2023, Mother filed a petition for modification of the existing custody order, upon direction by the trial court. *See id.* at 2. The trial court explained that "it was apparent that her proposed relocation would ultimately require a change in the current custody schedule and the parties were not in agreement regarding where the [C]hildren would attend school or what the custodial arrangement would be when the [C]hildren started school." *Id.* At that time, the Children were five years old and were scheduled to begin kindergarten for the 2024-25 school year. *See* N.T. Hr'g, 2/13/24, at 72-73, 176. In the petition, Mother requested primary physical custody with Father having partial physical custody during the school year and shared physical custody during the summer.

The court held a hearing on Mother's petitions on February 13, 2024. Mother testified that Mr. Beichner's home in Oil City, Venango County, is a driving distance of forty-five minutes from Father's apartment in Clarion County. *See id.* at 81. In addition, Mother presented the testimony of Mr. Beichner and the Children's speech therapist, Tracey Colwell. *See id.* at 3, 18.

Father testified that he was opposed to Mother's relocation with the Children and to modification of the existing custody order because he believed the Children are unsafe around Mr. Beichner. In support, he presented on rebuttal the testimony of Cassandra Beichner, the then-separated wife of Mr. Beichner, whose divorce action was pending. Mrs. Beichner testified that

"physical" and "verbal altercations" occurred during their marriage, with their two minor children being regularly present during the verbal altercations. *Id.* at 145, 147. It was also undisputed that Mr. Beichner pled guilty to a summary charge of harassment pursuant to 23 Pa.C.S. § 2709(a)(1) following a domestic violence incident between him and Mrs. Beichner witnessed by their children in September 2022. *See id.* at 19-20, 32, 142-43, 146. Consequently, the court issued a Protection from Abuse (PFA) order on behalf of Mrs. Beichner against Mr. Beichner. *See id.* at 146, 155. Finally, Father presented the testimony of the Children's babysitter, Terrisa Bork, who testified that she cared for the Children while Father was at work during his custodial time. *See id.* at 131-38.

Also relevant to this appeal is the undisputed testimonial evidence that E.R.M. suffered from medical issues at birth. Specifically, E.R.M. was diagnosed with periventricular leukomalacia, which is a neurological condition that is not further described in the certified record. *See id.* at 69; *see also* Mother's Exhibit B at 12. Upon discharge from the neo-natal intensive care unit, E.R.M. received both speech and physical therapy in the home,[2] which Mother coordinated, until he was approximately three years old. *See* N.T. Hr'g, 2/13/24, at 69, 120-22, 173; *see also* Mother's Exhibit B at 9. In

---

[2] Mother testified that "[s]peech therapy when you are an infant is to learn how to eat. How to do tongue control, muscle control." N.T. Hr'g, 2/13/24, at 121.

addition, E.R.M. required the use of "a feeding tube for several years." N.T. Hr'g, 2/13/24, at 69.

By 2021, when the Children were approximately three years old, the parties were concerned about delays in their speech, along with the development of E.R.M.'s motor skills. **See** Mother's Exhibit A at 9; **see also** Mother's Exhibit B at 14. As a result, the Children were each evaluated for an Individualized Education Plan (IEP) through the River View Intermediate Unit. **See** N.T. Hr'g, 2/13/24, at 3-4. With respect to E.R.M., the evaluation confirmed his speech delay and revealed delays in his "expressive" and "receptive" language.[3] **Id.** at 7. These delays qualified him for an IEP. **See** Mother's Exhibit B. As such, E.R.M. participated in a "specialized instruction" program, which is structured like a typical preschool classroom. N.T. Hr'g, 2/13/24, at 7-8. E.R.M. participated in the classroom-based program at Immaculate Conception Elementary School twice per week, during which he also received speech and occupational therapy. **See id.**; **see also** Mother's Exhibit B at 6-7.

At the time of the subject proceeding, E.R.M. had improved in "expressive" and "receptive" language skills and no longer needed classroom-based services. **See** N.T. Hr'g, 2/13/24, at 8-9; **see also** Mother's Exhibit B

---

[3] According to Ms. Colwell, the Children's speech therapist, "expressive language" is the "ability to communicate wants, needs, feelings." N.T. Hr'g, 2/13/24, at 7. "Receptive language" is the "ability to follow directions and to understand what [one] hears." **Id.**

at 6-7. However, E.R.M. continued to receive speech and occupational therapy on an outpatient basis. **See** N.T. Hr'g, 2/13/24, at 9, 70; **see also** Mother's Exhibit B at 6-7.

With respect to S.K.M., his IEP evaluation qualified him for speech therapy. **See** N.T. Hr'g, 2/13/24, at 9. After annual IEP reviews and two years of services, S.K.M. made significant improvements and no longer required any services at the time of the underlying hearing. **See id.** at 4, 7, 10, 70.

On May 2, 2024, the trial court granted Mother's request to relocate with the Children to the home of Mr. Beichner in Oil City and to modify the existing custody order. Specifically, the court awarded Mother primary physical custody commencing on the Sunday before the start of the 2024-25 school year. **See** Trial Ct. Order, 5/1/24 at 2 (unpaginated). The court awarded Father partial physical custody based on his rotating six-day work schedule at SCI-Forest, where he works for six consecutive days followed by two consecutive days off. When Father's time off falls on a weekend, he ultimately has three consecutive days off. As such, the court awarded Father partial physical custody "to coincide with his work schedule . . . [which] shall begin at 4 p.m. on the last day of work on his [six]-day rotation and shall continue until 8 p.m. the night before his first day back to work." **Id.** at 2-3 (unpaginated). The order awarded the parties shared physical custody during the summers on a 2-2-3 weekly basis. **See id.** at 3 (unpaginated). Finally,

the court awarded the parties shared legal custody. **See id.** at 2-3 (unpaginated). As noted above, the court issued a contemporaneous opinion with its order.

On May 30, 2024, Father, through counsel, filed a timely notice of appeal. Father filed his Rule 1925(b) statement on June 12, 2024.[4] The trial court filed a Rule 1925(a) opinion on August 7, 2024, addressing Father's claims.

On appeal, Father raises the following issues:

1. Did the [trial court] abuse its discretion by improperly truncating [Cassandra Beichner's] testimony?

2. Did the [trial court] abuse its discretion in concluding that [Michael Beichner] does not pose a danger to the Children?

3. Did the [trial court] abuse its discretion in errantly, and with bias, applying the sixteen custody factors, and the ten relocation factors, in arriving at its opinion on the best interest of the [C]hild[ren]?

4. Did the [trial court] unfairly prejudice[] Father by tarrying in its issuance of the instant decision in violation of Pa.R.C.P. 1915.4(d)?

_____

[4] Father failed to file his concise statement of errors complained of on appeal contemporaneously with his notice of appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). On June 6, 2024, the trial court ordered Father to file his concise statement "no later than June 14, 2024[,]" and Father timely complied. **See** Order, 6/6/24. As Father complied with the trial court's order, and there is no assertion of any prejudice, we accept his concise statement. **See In re K.T.E.L.**, 983 A.2d 745, 747 n.1 (Pa. Super. 2009) (an appellant's failure to simultaneously file a Rule 1925(b) statement in a children's fast track case did not result in waiver of all issues for appeal where the appellant later filed the statement, and there was no allegation of prejudice from the late filing).

Father's Brief at 4 (formatting altered).

In custody cases under the Child Custody Act (the Act), 23 Pa.C.S. §§

5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***C.R.F. v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted); ***see***

***also E.R. v. J.N.B.***, 129 A.3d 521, 527 (Pa. Super. 2015).

This Court has consistently held that

> the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

In addition,

> [a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a

review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (citations omitted); *see also Taylor v. Smith*, 302 A.3d 203, 207 (Pa. Super. 2023) (defining abuse of discretion as when a trial court overrides or misapplies the law or reaches a conclusion that is the result of partiality, prejudice, bias, or ill will).

The paramount concern in any custody case decided under the Act is the best interests of the child. *See* 23 Pa.C.S. §§ 5328, 5338. "The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral[,] and spiritual well-being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Section 5328(a) sets forth the best interest factors that the trial court must consider in awarding custody. *See E.D. v. M.P.*, 33 A.3d 73, 79-80 & n.2 (Pa. Super. 2011).

Section 5328(a) of the Act provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party

can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16)  Any other relevant factor.

23 Pa.C.S. § 5328(a).[5]

Where a request for relocation of a child along with a parent is involved, the trial court must also consider the following relocation factors set forth within Section 5337(h) of the Act:

**(h)  Relocation factors.**—In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1)  The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2)  The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3)  The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4)  The child's preference, taking into consideration the age and maturity of the child.

(5)  Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6)  Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not

---

[5] These are the custody factors that were in effect at the time the trial court made its decision.  Effective August 13, 2024, Section 5328(a) was subsequently reordered and amended.  **See** 23 Pa.C.S. § 5328 (amended April 15, 2024, P.L. 24, No. 8, § 3, effective in 120 days).

limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h). The party seeking relocation has the burden of proving that relocation will serve the best interests of the child or children in light of these ten factors. *J.M. v. K.W.*, 164 A.3d 1260, 1264 (Pa. Super. 2017) (*en banc*); *see also* 23 Pa.C.S. § 5337(i)(1). "Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." 23 Pa.C.S. § 5337(i)(2).

Further, with regard to the custody and relocation factors, this Court has stated:

**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order. Section 5337(h) requires courts to consider all relocation factors. The record must be clear on appeal that the trial court considered all the factors.

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.[] § 5323(d). Additionally, [S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen Section 5328[(a)] custody factors prior to the deadline by which a litigant must file a notice of appeal. Section 5323(d) applies to cases involving custody and relocation.

- 12 -

> In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d).

*A.V. v. S.T.*, 87 A.3d 818, 822-23 (Pa. Super. 2014) (some citations omitted, formatting altered, and emphasis in original).

Additionally, this Court has stated that the trial court is required to consider all the applicable factors regarding custody and relocation. *E.C.S. v. M.C.S.*, 256 A.3d 449, 453 (Pa. Super. 2021). Although the trial court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to 23 Pa.C.S. § 5328(a) and 23 Pa.C.S. § 5337(h), this Court has acknowledged that the amount of weight a trial court gives any one factor is almost entirely discretionary. *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013). "It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *Id.* (internal citations omitted). This Court has also stated that "[a] court should avoid dissociating the issue of primary custody from the issue of relocation, and should . . . decide the two issues together under a single umbrella of best interests of the children." *S.S. v. K.F.*, 189 A.3d 1093, 1098 (Pa. Super. 2018) (citations omitted and formatting altered).

Critically, this Court has explained that

> [i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case. *See A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa.

- 13 -

Super. 2010) ("In reviewing a custody order . . . our role does not include making independent factual determinations. . . . In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.").

***M.J.M.***, 63 A.3d at 339.

As noted previously, absent an abuse of discretion, we will not disturb a trial court's findings of fact or determinations regarding witness credibility or the weight of the evidence. ***See C.R.F.***, 45 A.3d at 443; ***see also E.R.***, 129 A.3d at 527. As this Court stated in ***King v. King***, 889 A.2d 630 (Pa. Super. 2005), "[i]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, [giving] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . ." ***King***, 889 A.2d at 632 (citation omitted).

### Mrs. Beichner's Rebuttal Testimony

In his first issue, Father argues that the trial court abused its discretion in not placing determinative weight upon the testimony of his rebuttal witness, Mrs. Beichner and by prohibiting her from testifying about allegations of sexual abuse allegedly committed against the daughter she shared with Mr. Beichner. ***See*** Father's Brief at 14-20; ***see also*** N.T. Hr'g, 2/13/24, at 147-48. Specifically, Appellant refers to the following exchange during the February 13, 2024 hearing:

> Father's Counsel: Let's put it this way, was there ever an allegation of sexual impropriety between Mr. Beichner and your daughter?

. . .

Mother's Counsel: Objection.  This is far beyond rebuttal, Your Honor.

. . .

Trial court:  This allegation was not a discussion or brought up at all during [Mother's] case in chief, so I am …

Father's Counsel:  Would you not like to know about it, Your Honor?

. . .

Trial court:  Okay, I am sustaining the objection.

N.T. Hr'g, 2/13/24, at 148-49.

Our standard of review for a ruling on the admission or exclusion of evidence is for an abuse of discretion.  **See Wilson v. Smyers**, 284 A.3d 509, 514 (Pa. Super. 2022).  This Court has explained:

> Generally the admission of rebuttal evidence is a matter within the sound discretion of the trial court.  Rebuttal evidence is proper where it is offered to **discredit testimony of an opponent's witness**.  Our Supreme Court has previously opined "where the evidence goes to the impeachment of his opponent's witness, it is admissible as a matter of right."  Furthermore, in order to constitute proper impeachment evidence, the rebuttal witness' version of the facts must differ from that of the witness being impeached.

**Am. Future Sys. v. Better Bus. Bureau**, 872 A.2d 1202, 1213 (Pa. Super. 2005) (emphasis added).

Here, in arguing that the trial court improperly limited Mrs. Beichner's rebuttal testimony, Father relies upon **Gill v. McGraw Electric Co.**, 399 A.2d 1095 (Pa. Super. 1979).  **See** Father's Brief at 18-19.  In **Gill**, the trial court allowed the defendant to present testimony from expert witnesses that were

not disclosed in the pre-trial conference order. **See Gill**, 399 A.2d at 1099. On appeal, this Court explained that the trial court should have employed a four-factor[6] analysis to determine whether to preclude the witnesses and concluded that the plaintiffs were ultimately prejudiced by the allowance of the testimony. **See id.** at 1102-03. Father essentially argues that the trial court should have evaluated the preclusion of a portion of Mrs. Beichner's testimony pursuant to the factors set forth by **Gill**, and its failure to do so constituted an abuse of discretion. **See** Father's Brief at 18-20.

Following our review, we conclude that Father's reliance upon **Gill** is misplaced because the at-issue testimony was, by definition, not rebuttal evidence. Simply put, there was no testimony given in Mother's case-in-chief regarding the allegations involving Mr. Beichner and his daughter. Therefore, we discern no abuse of discretion by the court in concluding that Mrs. Beichner's testimony was improperly offered as rebuttal evidence. **See Am. Future Sys.**, 872 A.2d at 1213. Accordingly, Father is not entitled to relief.

_____

[6] "Underlying the cases to which we have adverted are these basic considerations: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith of willfulness in failing to comply with the court's order." **Gill**, 399 A.2d at 1102.

**Trial Court's Conclusion Regarding Mr. Beichner**

In his second issue, Father alleges that because the trial court abused its discretion when it limited Mrs. Beichner's testimony, it likewise abused its discretion when it determined that Mr. Beichner does not pose a threat to the Children. Father's Brief at 21. Specifically, Father argues that instead of engaging in a substantive analysis of the safety of the Children pertaining to Mr. Beichner, the trial court instead, "chose to tacitly admonish Father for his 'regrettable' and 'destructive' attempt to 'paint the other party in the worst picture' he could." *Id.* at 25-26 (citation omitted).

In essence, Father contends that the trial court did not properly weigh Mrs. Beichner's testimony. However, as stated above, absent an abuse of discretion, we will not disturb a trial court's findings of fact, determinations regarding witness credibility, or the weight of the evidence. *See C.R.F.*, 45 A.3d at 443; *see also E.R.*, 129 A.3d at 527.

The record reflects that the trial court questioned Mrs. Beichner's motives for testifying, examining whether it was out of "a desire to retaliate against her ex-husband for his wrongdoings in their relationship." Trial Ct. Op., 5/1/24, at 10-11 (unpaginated). Indeed, Mrs. Beichner confirmed that her testimony was motivated by a desire to injure Mr. Beichner's reputation, stating: "I feel like Michael tries to spin that he's such a nice guy and Michael's really a piece of crap. . . . And I am tired of him acting like he's so great." N.T. Hr'g, 2/13/24, at 153-54.

Ultimately, the trial court's finding that Mr. Beichner does not pose a danger to the Children is supported by record evidence. Mr. Beichner enrolled himself in counseling for anger management with licensed social worker Cindy Curran at Family Service and Children's Aid Society of Venango County following the incident in September 2022. *See id.* at 20-21; *see also* Mother's Exhibit C. A letter from Ms. Curran indicated that Mr. Beichner is "engaged and active in the therapeutic process[,] responds appropriately to treatment[,]" and will be ready for discharge "within the next two to three months." Mother's Exhibit C. Mr. Beichner testified that counseling has been effective for him. **See** N.T. Hr'g, 2/13/24, at 21-22.

Further, the record reveals that there were multiple altercations during the Beichners' marriage, during which each had occasions where they were the aggressor. *See id.* at 37-38, 42, 142-46. Mrs. Beichner ultimately requested to discharge the PFA order she obtained following the September 2022 incident because she "didn't feel it was necessary." *See id.* at 146. Additionally, Mr. and Mrs. Beichner agreed to a "50/50" custody schedule with their own minor children. *See id.* at 19, 43, 150, 155-56. Mrs. Beichner testified that there had "never ever been any allegation of [Mr. Beichner] touching our children or him hitting them. It was only ever me." *See id.* at 156. Mother's testimony confirmed that Mr. Beichner had "never been abusive" to his own daughters, Mother, or the Children. *Id.* at 77. Because the trial court's findings are supported by the record, we conclude that they

were not manifestly unreasonable or a product of bias. ***See Taylor*** 302 A.3d at 207. Father's argument amounts to little more than a request that we re-weigh the evidence and credibility determinations rendered by the trial court as to Mrs. Beichner. As noted above, we defer to the trial court's weight of the evidence and credibility findings where, as here, they are supported by the record evidence. ***See id***. Accordingly, no relief is due with respect to Father's second issue.

## Custody and Relocation Factors

In his third issue, Father challenges the trial court's findings with respect to Sections 5328(a)(2)-(5), (11), Sections 5337(h)(3), and (5)-(8). ***See*** Father's Brief at 26. Initially, we observe that all of Father's arguments seek for this Court to re-weigh the evidence. ***See id.*** As continually noted, we decline to do so and defer to the trial court's weight of the evidence findings as they are supported by the record evidence. ***See C.R.F.***, 45 A.3d at 443.

In any event, the record reflects that the trial court complied with 23 Pa.C.S. § 5323(d) by discussing all of the custody and relocation factors in its May 1, 2024 opinion. The trial court concluded that none of the Section 5328(a) custody factors weighed in Father's favor. Specifically, the trial court found that Section 5328(a)(3), (5), and (10) in Mother's favor, while Section 5328(a)(1), (2), (4), (9), (10), (11), (12), and (13) weighed equally between the parties. The trial court found Section 5328(a)(6), (7), (8), (14), (15), and

(16) inapplicable in this case. **See** Trial Ct. Op., 5/1/24, at 8-16 (unpaginated).

Ultimately, the trial court found the factors at Section 5328(a)(2) and (3) to be determinative. Specifically, the trial court found that "[t]he issue of Michael Beichner's history of abusive behavior was thoroughly explored at trial and taken into consideration by this court and this court does not find him to pose any risk of harm to the [C]hildren." **Id.** at 11 (unpaginated). Further, the trial court found that "Mother carries a higher level of responsibility for parental duties than Father." **Id.**

The trial court also concluded that none of the Section 5337(h) relocation factors weighed in Father's favor. Specifically, the trial court concluded that Section 5337(h)(2), (3), (6), and (7) weighed in Mother's favor, while Section 5337(h)(1), (8), and (9) weighed equally between the parties. Finally, the court found Section 5337(h)(4), (5), and (10) inapplicable in this case. **See id.** at 3-8 (unpaginated).

In concluding that Section 5337(h)(2) was determinative, the trial court reasoned as follows:

> At the time of trial, S.[K.]M. had completed the recommended programming for his speech development and E.[R.]M. was participating in outpatient once weekly. The speech therapist that had worked with the Children explained that any further need for therapy would be determined through the school district where the Children attend school, if needed. At this stage in the life of these Children, the relocation will have minimal impact on the physical, educational, and emotional development of the Children so long as frequent and continued contact with each parent is maintained.

*Id.* at 4 (unpaginated; some formatting altered).

As to Section 5328(a)(2), which pertains to which party can better provide adequate physical safeguards and supervision of the Children, Father argues that Mother cannot provide such care because she failed to appreciate the danger posed to them by Mr. Beichner. *See* Father's Brief at 27. This argument fails because, as discussed above, we discern no abuse of discretion in the trial court concluding that Mr. Beichner does not pose a danger to the Children. Therefore, no relief is due with respect to Section 5328(a)(2).

With respect to Section 5328(a)(3), concerning the parental duties performed by each party on behalf of the Children, the trial court found that Mother "played a more active and informed role" than Father in the Children's educational needs, "having engaged on a more regular basis" with their service providers. Trial Ct. Op., 5/1/24, at 11 (unpaginated). Father argues that there was "objective testimony that [he] participated in such services whilst working full time." Father's Brief at 30.

However, our review of the certified record reveals support for the trial court's findings. Father was aware of the Children's involvement in therapies, but specifically testified that he did not discuss their progress with their service providers. *See* N.T. Hr'g, 2/13/24, at 174, 186. Father acknowledged that he has not attended any of the Children's medical appointments since his separation from Mother in 2022. *See id.* at 200. Mother testified that she makes the decisions regarding the Children's need for medical treatment even

when they are in Father's care. *See id.* at 69. Further, Father had never obtained any information regarding the Children's medical or educational needs from their providers since the initial custody order was put in place, blaming Mother for not disclosing the information to him. *See id.* at 197-98 (Father testified on cross examination, "I shouldn't have to [go to the provider] if [Mother is] being transparent though[.]"). Therefore, we discern no abuse of discretion regarding the trial court's findings pursuant to Section 5328(a)(3), and no relief is due.

Next, we turn to Section 5328(a)(4) and Section 5337(h)(7), which concern the need for stability and continuity in the Children's education, family, and community lives, and enhancing their general quality of life. With respect to the Children's education, the trial court found, in relevant part, that Mother has a "solid plan to establish a permanent home in Oil City" and the Children "would generally have the same educational opportunities" because they "do not have established educational connections to the school district[,]" as they were not to commence kindergarten until the upcoming school year. Trial Ct. Op., 5/1/24, at 6, 12 (unpaginated).

Father contends that Mother kept the Children out of kindergarten so she could relocate, and essentially that this factor should have been weighed in his favor because he wants the Children to attend school at Immaculate Conception, where they received their early intervention services. *See* Father's Brief at 29-31. Father claims that the trial court ignored that the

instability for the Children would be "enhanced" by Mother's proposed relocation to "nearly an hour away to a new home altogether[,]" and that the court erred because it did not discuss "that the only real home of memory for [the] Children was the very home from which Mother proposed relocating[.]" *Id.* at 28-29.

Our review of the record indicates that there is sufficient support for the trial court's findings. Mother testified that she wanted to keep the Children in their early intervention services instead of enrolling them in kindergarten, specifically because she felt that E.R.M. was not ready, and that Father "really didn't say a whole lot. He didn't object to that at all." N.T. Hr'g, 2/13/24, at 72-73. Father confirmed that he agreed with waiting to enroll the Children in kindergarten. *See id.* at 176.

The Children's speech therapist testified that E.R.M.'s speech and occupational therapy providers would be changed regardless of his location because once he was enrolled in school, the school district would take over the services. *See id.* at 12, 17. Further, the program that the Children received their services through was the River View Intermediate Unit, not Immaculate Conception. *See id.* at 12, 15. The services simply took place at the school, but were not affiliated with it. *See id.* Additionally, Father had never contacted Immaculate Conception to inquire about kindergarten enrollment, while Mother had contacted the prospective elementary school in

Oil City and begun the necessary pre-enrollment appointments. *See id.* at 73-74, 203.

Moreover, both Mother and Mr. Beichner testified that the Children are very familiar with their proposed new home, as they spend a substantial amount of time there, have their own bedroom, and spend the night often. *See id.* at 26-27, 29, 75. As this evidence supports the trial court's findings pursuant to Section 5328(a)(4) and Section 5337(h)(7), we discern no abuse of discretion, and no relief is due.

Regarding Section 5328(a)(5), the availability of extended family, the trial court seemingly found that this factor slightly favored Mother because the Children's maternal grandparents provide childcare on a regular basis for Mother. *See* Trial Ct. Op., 5/1/24, at 12-13 (unpaginated). Father argues that the trial court failed to acknowledge that the Children's maternal grandparents "withheld from Father knowledge of [Mr. Beichner's] abusive past" and this is the reason he opts to use Ms. Bork as a babysitter. Father's Brief at 31.

Father's arguments have no merit because they are not relevant to the extended family's **availability**. Specifically, the only evidence presented as to availability of extended family was indeed as to maternal grandparents. *See* N.T. Hr'g, 2/13/24, at 50, 54 (Mother testifying that maternal grandparents have provided childcare "ever since [the Children] were born" and assisted the parties with childcare following their separation). Father's

testimony made no mention of the availability of his extended family for childcare, although we note that Mother provided undisputed testimony that Father has no involvement with his family, and the Children have no relationship with them. *See id.* at 50, 162-63. Therefore, we discern no abuse of discretion regarding the trial court's findings pursuant to Section 5328(a)(5), and no relief is due.

Father next challenges the trial court's findings as to Sections 5328(a)(11) and 5337(h)(3), which concern the proximity of the parties' residences and the feasibility of preserving the relationship between the parents and the Children. Of relevance, the trial court found "Mother's proposed relocation does not present a challenge to preserving the feasibility of the relationship between Father and the [C]hildren" as the residences are 45 minutes apart and the parties have a history of communicating effectively regarding the Children. Trial Ct. Op., 5/1/24, at 4-5, 14 (unpaginated).

Father's sole argument with respect to this factor lies with the fact that he "would be forced to, on his days off during the school year, drive [the] [C]hildren for nearly an hour to school, then drive back to his home, and then undertake that entire process again to retrieve [the] [C]hildren after school." Father's Brief at 28. Father does not explain how this is impractical or fails to preserve his relationship with the Children.

Our review of the certified record shows that the trial court's findings are supported by record evidence. The distance between the parties'

residences is undisputed. Indeed, the record evidence is clear that the parties were effectively co-parenting before Father investigated Mr. Beichner. ***See*** N.T. Hr'g, 2/13/24, at 54, 61-62. Further, Father made no mention in his testimony that the 45-minute drive to Mother's proposed residence would pose a hardship on his days off. ***See id.*** at 79. Therefore, Father's arguments have no merit, and we discern no abuse of discretion regarding the trial court's findings pursuant to Sections 5328(a)(11) and 5337(h)(3).

With respect to Section 5337(h)(5), which considers whether there was an established pattern of conduct of either party to thwart the relationship of the Children and the other party, the trial court found this not applicable because neither party demonstrated such pattern. ***See*** Trial Ct. Op., 5/1/24, at 5 (unpaginated). Indeed, the court found "[to] the contrary, [the parties] have worked to ensure that they share custody and adjust the custodial schedule based on the fluctuations in their respective work schedules." ***Id.***

Father disputes the court's findings for this factor due to "Mother's proactive concealment of [Mr. Beichner's] abusive past[.]" Father's Brief at 29. Father's argument simply has no factual merit because he does not assert or provide any record evidence that this alleged behavior impacted his relationship with the Children in any way. Therefore, Father's argument fails, and we discern no abuse of discretion regarding the trial court's findings pursuant to Section 5337(h)(5).

Turning to Section 5337(h)(6), whether the proposed relocation will enhance the general quality of life for the party seeking relocation, the trial court found that this factor favored Mother because she "would benefit emotionally from the relocation because it would allow her to continue to develop and foster her relationship with [Mr.] Beichner." Trial Ct. Op., 5/1/24, at 6 (unpaginated). Father challenges the court's findings for this factor because "it never mentioned the potential emotional impact of the dissolution of the relationship" between Mother and Mr. Beichner. Father's Brief at 29.

The certified record contains sufficient support for the trial court's findings. Indeed, both Mother and Mr. Beichner testified to their commitment to their relationship and future plan for marriage. *See* N.T. Hr'g, 2/13/24, at 29-30, 64, 71, 87, 92, 114. Father's arguments are purely speculative and are not supported by any record evidence. Therefore, we discern no abuse of discretion regarding the trial court's findings pursuant to Section 5337(h)(6) and no relief is due.

Finally, as to Section 5337(h)(8), the reasons and motivations of each party for seeking or opposing the relocation, the trial court weighed this factor as neutral because it acknowledged the parties' respective reasonings. *See* Trial Ct. Op., 5/1/24, at 6-7 (unpaginated). In challenging the trial court's findings as to this factor, Father frames his argument as if the trial court found this factor in favor of Mother "because Mother and [Mr. Beichner] had, at the

time of trial, been romantically involved for nine (9) whole months." Father's Brief at 30.

Father mischaracterizes the trial court's findings. The trial court acknowledged both Mother's reasons for seeking relocation and Father's reasons for opposing it, which are supported by the record evidence. It is undisputed that Mother seeks relocation to further her romantic relationship with Mr. Beichner, and Father resists the relocation due to his concerns about the claims of Mr. Beichner's history of domestic violence. The trial court considered this factor and found that it did not favor either party. Therefore, we discern no abuse of discretion regarding the trial court's findings pursuant to Section 5337(h)(8).

Finding that none of Father's arguments as to his third issue have merit, we discern no abuse of discretion or error of law regarding the trial court's findings with respect to Sections 5328(a)(2)-(5), (11), Sections 5337(h)(3), and (5)-(8) of the Child Custody Act. No relief is due with respect to Father's third issue.

## Pa.R.C.P. 1915.4(d)

In his remaining claim, Father alleges that he was unfairly prejudiced by the trial court's violation of Pa.R.C.P. 1915.4(d), which provides as follows:

> **(d) Prompt Decisions.** The judge's decision shall be entered and filed within 15 days of the date upon which the trial is concluded unless, within that time, the court extends the date for such decision by order entered of record showing good cause for the extension. In no event shall an extension delay the entry of the court's decision more than 45 days after the conclusion of trial.

Pa.R.C.P. 1915.4(d). Father asserts that the trial court took 79 days to issue its decision, which he argues essentially denied him his guarantee of due process of law under the Fourteenth Amendment of the United States Constitution. Specifically, Father asserts he was unable to take further action, *i.e.*, "unable to file a potential appeal, exceptions, [or] reconsideration in a timely manner" with the deadline of school enrollment for the Children approaching. Father's Brief at 34.

Initially, we note that Father is correct that the trial took 79 days between the February 13, 2024 trial and the issuance of the court's May 1, 2024 decision.[7] In its 1925(a) opinion, the trial court explained this delay was caused by the convergence of multiple factors, namely: (1) she is the only judge in Clarion County; (2) during this time period the county courthouse was completely relocating for renovations, and, as the only judge, she had to oversee the operation; (3) her law clerk was on leave for two months; and (4) extra time was needed for the consideration of the 26 factors for this case. *See* Trial Ct. Op., 6/26/24, at ¶5 (unpaginated).

Instantly, the above circumstances that contributed to the trial court's delay in its issuance of the subject opinion and order establish grounds for

---

[7] Father filed a petition requesting that the trial court issue a decision on April 2, 2024. *See* Father's Petition to Compel Final Order, 4/2/24. The court issued an order on April 15, 2024, denying Father's petition stating it was "diligently working on its decision." *See* Order, 4/16/24.

- 29 -

deviation from the time limits imposed by Rule 1915.4(d). While this Court does not condone such delay in decisions in custody matters, we decline to conclude that trial court's delay in this case was unreasonable. *See A.C. v. J.B.*, 1751 EDA 2022, 2023 WL 2412771 at *9 (Pa Super. filed Mar. 8, 2023) (unpublished mem.) (declining to fault a trial court for a Rule 1915.4(d) violation that was the result of a "planned vacation" and an "extraordinarily" complex case).[8]

In any event, even if the trial court's delay was unjustified, Father would not be entitled to relief. Rule 1915.4(d) does not provide a remedy or any other sanction when the trial court does not comply with the time limits. *See Dear v. Dear*, 3023 EDA 2023, 2024 WL 3791650 at *6 (Pa. Super. filed Aug. 13, 2024) (unpublished mem.) (noting that subsection 1915.4(d) does not provide a remedy or sanction for failure to comply); *see also Heffley v. Heffley*, 977 WDA 2023, 2024 WL 1855126 at *8 (Pa. Super. filed Apr. 29, 2024) (unpublished mem.) (declining to vacate a custody order due to a violation of Pa.R.C.P. 1915.4(d) because it does not provide a remedy). Father appears to acknowledge there is no remedy for this violation as he makes no specific prayer for relief from this Court regarding this issue. *See* Father's Brief at 32-36. Therefore, Father is not entitled to relief.

---

[8] We may cite to this Court's non-precedential memoranda filed after May 1, 2019 for persuasive value. *See* Pa.R.A.P. 126(b).

For these reasons, we conclude that Father is not entitled to relief. Accordingly, we affirm.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 01/16/2025